THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHIRLEY METOXEN, Defendant-Appellant.

First District (4th Division)  No. 80—3236

Opinion filed November 3, 1983.—Rehearing denied December 7, 1984.

Steven Clark and Richard F. Faust, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lawrence R. Stasica, and Thomas J. Finn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Shirley Metoxen, appeals her convictions for murder, home invasion and burglary (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a), 12—11(a)(2), 19—1(a)). After a jury trial, she was sentenced to a term of 38 years for murder, and concurrent terms of 10 years for home invasion and seven years for burglary. Defendant appeals and raises the following issues for review: (1) whether the trial court committed reversible error when it failed to suppress an inculpatory statement she made during a custodial interrogation and (2) whether the trial court abused its discretion in sentencing her to 38 years in the penitentiary.

We affirm.

On February 10, 1980, Clarence McShane was killed. Defendant Metoxen and Peter Denning were charged with his murder.

On November 13, 1980, a hearing was held on defendant's motion to suppress statement. Jasper Romano, a Chicago policeman, testified that on February 10, 1980, at 11:25 p.m., he was at 4735 North Malden in Chicago, Illinois. He arrested defendant Metoxen and advised her of her *Miranda* rights. She responded, "We don't do that in there." She appeared to have been drinking.

Other officers took defendant to the police station. Romano saw

defendant again around midnight and re-advised her of her rights. She said, "I know my rights," and swore at Romano and other police personnel. According to Romano, defendant never said she did not want to talk without a lawyer, she never requested a lawyer, and no one told her that she had been implicated in the homicide of Clarence McShane, that her confession would result in leniency, or that police would intercede on her behalf. Nick Stasibopoulos, a Chicago policeman, corroborated Romano's testimony.

Samuel Greiner, a Chicago policeman and homicide investigator, talked with defendant at 1 a.m. on February 11, 1980, after advising her of her *Miranda* rights. Defendant said she understood her rights. She was alert and not under the influence of drugs or alcohol. Investigator Hart McQuinn was also present. Between 3 and 4 a.m., an attorney, whose name Greiner did not know, spoke with Denning and then with Metoxen. Later the attorney told Greiner that he would represent Denning but not Metoxen. Hart McQuinn corroborated Greiner's testimony.

At 3:30 p.m. on February 11, 1980, Greiner was present when Assistant State's Attorney Elaine Geer had a conversation with defendant. Geer first advised defendant of her rights, which she said she understood. Defendant appeared to be alert and not under the influence of alcohol or drugs.

According to Greiner, during the 1 a.m. and 3:30 p.m. conversations, defendant never said she wanted a lawyer or wanted to remain silent. She was not told that she had been implicated in the homicide of McShane, that confession would result in leniency, or that the police would intercede on her behalf.

Elaine Geer, an assistant State's Attorney, corroborated Greiner's account of her afternoon meeting with defendant.

Thomas Keane, a Chicago policeman, investigated the McShane homicide. At 7:30 p.m. on February 11, 1980, he had a conversation with defendant after advising her of her *Miranda* rights, which she said she understood. Keane was present during another conversation with defendant at 9:30 p.m. Also present were police officer Kenneth Spink and Assistant State's Attorney Schulgasser. Again, defendant was advised of her *Miranda* rights, which she said she understood. During both conversations, defendant made no complaints. She did not appear to be under the influence of drugs or alcohol. She did not ask for a lawyer or say that she had previously asked for a lawyer. She did not say she wished to remain silent or say she had previously asked to remain silent. Nothing was said to induce defendant to confess. Keane's testimony was corroborated by Kenneth Spink.

Henry Schulgasser, an assistant State's Attorney, corroborated Keane's account of the 9:30 p.m. conversation with defendant. During that conversation, Schulgasser told defendant that he knew an attorney had been to see her. He asked her whether that attorney was representing her. She responded that he was not, that she did not know where he was from, and that she did not need an attorney.

Schulgasser, Spink, Keane and a court reporter were present during a conversation with defendant at 10:15 p.m. on February 11, 1980. When advised of her rights, defendant said she understood. In response to the question, "Have you requested a lawyer at any time?" defendant said, "Before I did, but they would not give me one." After the court reporter typed the statement, defendant read, initialed and signed it.

After the State rested, the defense called Thomas Prendergast as its first witness. Prendergast, an attorney, testified that he was informed about the McShane homicide on the morning of February 11, 1980. He arrived at the police station at Belmont and Western at 2:30 or 3 in the afternoon. He spoke to Denning and Metoxen, told them not to answer any questions and to ask for an attorney if questioned, and informed the police that he had so advised the suspects. Prendergast also told the police that he was going to represent Denning and possibly Metoxen. He discussed fees with Denning's family but not Metoxen because she had no money.

On cross-examination, Prendergast said that Metoxen asked, "Will you represent me?" He said, "Yes, but there may be a conflict. If there is, of course, I won't be able to represent both of you." Prendergast admitted that he never made any court appearances on behalf of either "client" because Denning's family was unable to pay. Prendergast also stated that he briefly talked with Assistant State's Attorney Geer about potential charges against his clients.

Defendant, Shirley Metoxen, testified that on February 10, 1980, at 11:30 p.m., she was arrested, advised of her *Miranda* rights and taken to the Foster Avenue police station where she was again advised of her rights. Then she was taken to the Belmont Avenue police station. Officers Greiner and McQuin spoke to her several times but they were not always together. They did not always advise of her of *Miranda* rights before speaking with her.

On the afternoon of February 11, 1980, Assistant State's Attorney Geer advised defendant of her *Miranda* rights and then spoke with her. Geer told defendant that the blood of the victim was found on her (defendant's) clothes. Metoxen said she wanted a lawyer. Geer responded that defendant would get one when she went to court the

next day.

Metoxen said she had two conversations with attorney Prendergast and considered him her lawyer. About 30 minutes after talking with Prendergast, defendant talked to Officer Spink. She told him that she wanted a lawyer and wanted to remain silent. Spink told her that Denning had made a written statement inculpating her and that if she confessed, the judge would be lenient. If she cooperated, the police would intercede for her before the judge.

Defendant had two conversations with Assistant State's Attorney Schulgasser. In her first conversation she did not ask for a lawyer because she had been put off and told she would get one the next day. In a second conversation, defendant stated that she had asked for a lawyer before. She also said that she did not then wish to have an attorney present. Defendant denied that she told Schulgasser she did not want an attorney.

On February 11, 1980, defendant was in the interview room all day and was handcuffed. She was given food.

Elaine Geer, an assistant State's Attorney, was called on rebuttal. She testified that she never told defendant that the victim's blood was found on her clothing. Defendant never said she wanted a lawyer, wanted to speak to a lawyer, or had asked anyone else for a lawyer.

At the close of the hearing, the trial court denied defendant's motion to suppress statement, finding that no promises were made to defendant and that defendant did not wish an attorney to be present when she gave her written statement "freely and voluntarily."

At trial, Assistant State's Attorney Henry Schulgasser was the first prosecution witness. He laid the foundation for the introduction into evidence of defendant's written statement.

After *Miranda* warnings, defendant said that on the evening of February 10, 1980, she lived in an apartment at 4735 North Malden in Chicago. Defendant and her friend, Peter Denning, decided to rob McShane, who lived in the same building and had been robbed before. Denning kicked in McShane's door when he refused to let them in. Both defendant and Denning fought McShane and told him to give them his money, but no money was found. Defendant choked McShane. As she and Denning were leaving the apartment, they encountered the police. At the conclusion of her statement, defendant said that she had eaten and that no one threatened or coerced her into making a statement.

Eddie Noah testified that on February 10, 1980, he lived in an apartment at 4735 North Malden next to McShane's apartment. At 8 p.m., he fell asleep. He woke up a few hours later when he heard

someone prying at a door. Then he heard the door break in and Mc-Shane yelling. Noah went to the manager and asked her to call the police. They came within five minutes.

Nick Stasibopoulos, a Chicago policeman, was working with his partner, Jasper Romano, on the evening of February 10, 1980, when he received a radio message directing him to the Malden address. They arrived within 45 seconds. Stasibopoulos talked with the manager and then proceeded to McShane's apartment. As he was about to enter, two people were leaving—Metoxen and Denning. Both had blood on their clothes. While Romano watched the suspects, Officer Stasibopoulos entered the apartment and saw a man lying on the floor. The door was broken in and the apartment ransacked. The suspects were handcuffed and given *Miranda* warnings. Defendant was taken to the Foster Avenue police station. Officer Romano corroborated the testimony of Stasibopoulos.

Marianne Caparusso, a microanalyst for the Chicago police department, testified that bloodstains on the clothing of Denning and defendant matched the victim's blood type.

Metra Kalelkar, a forensic pathologist for the Cook County Medical Examiner, autopsied the victim on February 11, 1980. The cause of death was manual strangulation.

The State rested and, after offering certain stipulations, the defense rested. The jury found defendant guilty of murder, home invasion and burglary. The trial court sentenced her to 38 years for murder and to concurrent terms of 10 years for home invasion and seven years for burglary.

The first issue raised on appeal by defendant is whether the trial court committed reversible error when it failed to suppress an inculpatory statement she made during a custodial interrogation. Defendant claims that attorney Prendergast became her lawyer during his afternoon visit to the police station on February 11, 1980. Prendergast advised her to remain silent and not to answer questions in the absence of counsel. Defendant contends that her requests to have counsel present were ignored. She concludes that since she did not initiate any conversations subsequent to invoking her right to counsel, any resultant statement should have been suppressed.

■ At a hearing to suppress a confession, it is the trial court's responsibility to determine the credibility of the witnesses and the competency of the confession, and the trial court's decision will not be reversed unless it is contrary to the manifest weight of the evidence. (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 280, 393 N.E.2d 1098, 1114.) In the case at bar, there is ample testimony which, if believed,

supports the trial court's determination. Police officers Romano, Stasibopoulos, Greiner and McQuinn and Assistant State's Attorney Geer all testified that defendant did not invoke any of her *Miranda* rights. No evidence established that defendant ever invoked those rights except for defendant's own testimony at the suppression hearing and during the taking of her written statement in the presence of Officers Keane and Spink and Assistant State's Attorney Schulgasser. The latter three witnesses testified that defendant did not previously invoke her *Miranda* rights.

■ The testimony of defendant and Prendergast suggesting that the latter had been retained as her counsel was contradicted by the testimony of Schulgasser who stated that defendant said Prendergast was not her attorney and she did not need one. Accordingly, we hold that the trial court properly denied defendant's motion to suppress her confession.

The next issue raised by defendant is whether the trial court abused its discretion in sentencing her to 38 years for murder. Defendant argues that her young age (23 years old at the time of the crime), lack of criminal record, and intoxicated condition at the time of the crime indicate that the sentence she received for murder was excessive and an abuse of the trial court's discretion.

Imposition of a sentence is a matter of judicial discretion and absent an abuse of discretion, the sentence of the trial court may not be altered upon review. (*People v. Grady* (1982), 107 Ill. App. 3d 970, 977, 438 N.E.2d 608, 614.) The trial court's decision with regard to sentencing is entitled to great weight because the trial judge had an opportunity to observe and consider the defendant's credibility, demeanor, mentality and a host of other factors. *People v. Daugherty* (1982), 104 Ill. App. 3d 89, 91-92, 432 N.E.2d 391, 393.

■ Before pronouncing sentence, the trial court stated that he had considered all the factors in mitigation and aggravation argued by defense counsel and the State. The 38-year sentence for murder was within the range of 20 to 40 years provided by statute. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1).) In our opinion, the trial court did not abuse its discretion in sentencing defendant to 38 years for murder.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P.J., and LINN, J., concur.