THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE JENKINS, Defendant-Appellant.

First District (4th Division)   No. 83—1330

Opinion filed November 21, 1984.

Steven Clark and Jeffrey Walker, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Timothy J. Frenzer, and Mary L. Ryan Norwell, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, George Jenkins, was charged with rape, deviate sexual assault, aggravated battery, intimidation, home invasion, unlawful restraint and unlawful communication with a witness. Following a bench trial, defendant was convicted of rape, deviate sexual assault and aggravated battery (Ill. Rev. Stat. 1981, ch. 38, pars. 11—1(a), 11—3(a), 12—4). He received concurrent sentences of 20 years for rape and deviate sexual assault, and 5 years for aggravated battery.

On appeal, this court is asked to consider (1) whether the sentences imposed upon defendant were abusive of the trial court's discretion, and (2) whether defendant's convictions should be reversed because they resulted from the illegal interception of a telephone conversation between the defendant and the complaining witness.

We affirm.

Testimony at trial established that complainant and defendant Jenkins met each other in the summer of 1981. They became involved in a romantic relationship which continued on and off for several months. Approximately three months after the relationship began,

defendant broke several windows in complainant's apartment and tore the mirror from her car. Complainant became fearful of defendant and attempted to end the relationship. Defendant physically attacked complainant on several occasions and frequently made threatening telephone calls to her. Complainant testified that defendant frequently threatened to harm her mother and son if she did not resume their relationship and submit to his sexual demands. Complainant denied that defendant had ever lived with her or had keys to her house.

In May 1982, complainant obtained a court order of protection against defendant, according to which defendant was to have no contact whatsoever with complainant. In June 1982, defendant forced his way into complainant's apartment, threw complainant to the floor, and choked and beat her. Thereafter, complainant made several reports to the police regarding defendant's behavior toward her. As a result of the June incident, complainant suffered a torn artery in her mouth and was hospitalized for 10 days.

Defendant was convicted of battery and criminal damage to property in connection with the June incident. He received 30 days in the county jail and one year's probation. He was also ordered by the court to avoid all contact with complainant.

On the evening of July 10, 1982, as complainant entered her apartment, defendant pushed the door open and forced his way into the apartment with her. Complainant stated that she was frightened but tried to pretend that she was not. Shortly thereafter, defendant struck the victim several times on different parts of her body including the right side of her face, after which she could not hear and there was a ringing in her right ear. He also slammed a telephone into her abdomen. Defendant then forced the victim to engage in acts of oral sex and intercourse. Defendant remained in complainant's house throughout the night.

The following morning, the victim assured defendant that she would not report him to the police. She offered to drive him home, which she did. She was afraid that defendant would kill both her and her son if he thought that she was going to report the incident to the police.

On July 12, 1982, defendant telephoned the victim more than 20 times at her place of employment. She refused to speak with him. At approximately 3:30 p.m., a brick was thrown through the front window of complainant's place of employment. The police were called. Shortly thereafter, defendant telephoned the victim again. While the victim was talking on the telephone with defendant, the police arrived. At the direction of the victim's employer, Chicago police officer

Thun picked up an extension telephone and listened to approximately 20 minutes of the conversation. The victim sat approximately 15 feet away from the police officer and was aware that he was listening to her conversation. The officer made notes of some of the numerous threats he heard being made against complainant by a male voice on the telephone. The threats included promises of revenge and blowing the victim's brains out as well as threats against the victim's son.

During the conversation, Officer Thun became aware that the call was being placed from a tavern with which he (the officer) was familiar. A police car was dispatched to the tavern, and several minutes later the conversation ended abruptly. Officer Thun received a call shortly thereafter which informed him that a man had been arrested as he talked on the telephone at the tavern. The victim later identified the man who had been arrested while talking on the telephone as defendant. While in custody, defendant told Assistant State's Attorney Bastone that on July 10, 1982, the victim telephoned him and asked him to come to her apartment. Once there, they engaged in several consensual sexual acts. The pair later argued, and defendant struck the victim a couple of times before leaving the apartment that evening (July 10, 1982). At trial, however, defendant denied having had that conversation with Bastone. He also denied having been at the victim's apartment or seeing her at all on July 10, 1982, the day the crimes for which he was charged took place.

It was stipulated that on July 15, 1982, five days after the offenses, the victim's physician found a massive hematoma, contusion and a large bruise on the victim's right arm, contusions and a lump on her abdomen, and a perforated right eardrum.

There was testimony by Robert Vaughan, an acquaintance of defendant, that while defendant was awaiting trial for the current crimes he called Vaughan at least 40 times. During these calls, defendant tried to enlist Vaughan's aid in convincing the victim to drop the charges. Vaughan did make one call to the victim but she refused to drop the charges.

Defendant was found guilty by the court of rape, two counts of deviate sexual assault, and aggravated battery. At a sentencing hearing, it was revealed that defendant had had numerous arrests and several convictions for violent crimes beginning in 1959. The trial court, in pronouncing sentence, noted that he found defendant's testimony completely incredible. The court also commented on the violent nature of the acts. Defendant received concurrent sentences of 20 years for rape and deviate sexual assault, and 5 years for aggravated battery.

On appeal, defendant asks this court to reduce his sentence or, in the alternative, set it aside and remand for a new sentence. He argues that the trial court abused its discretion in imposing a 20-year sentence. Defendant points out that the court focused on the offense rather than considering all the factors such as protection of society and the rehabilitative potential of the defendant. Further, prior to the crimes against the victim in this case, defendant had had no convictions for five years and had never been convicted of a Class X felony.

Sentencing decisions are matters of judicial discretion, and so long as the sentence imposed is within the statutory limits, we may not exercise our power to reduce it absent a finding that the court has abused that discretion (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883), since the trial court has a better opportunity to acquire information about the defendant and assess factors in aggravation and mitigation (*People v. Gallardo* (1983), 112 Ill. App. 3d 764, 775, 445 N.E.2d 1213, 1222). A rebuttable presumption arises that the sentence imposed was proper and is only overcome by an affirmative showing that the sentence imposed varies greatly from the purposes and spirit of the law or is manifestly violative of constitutional guidelines. 112 Ill. App. 3d 764, 775.

Rape and deviate sexual assault are Class X felonies, punishable by a sentence of not less than six nor more than 30 years' imprisonment. Aggravated battery, a Class 3 felony, is punishable by a sentence of not less than two nor more than five years' imprisonment. The sentences imposed by the trial court fell within these statutory guidelines.

The record shows that defendant committed numerous and repeated acts of violence against the victim. In fact, the crimes which gave rise to this appeal were committed after defendant had been convicted of other acts of violence against this same victim and had received a comparatively light sentence. The record suggests that defendant was not in any way deterred nor did he appear to respect the trial court's earlier orders to stay away from the victim. Additionally, the trial court need not make an express finding that defendant lacked rehabilitative potential before imposing sentence, since that factor is not entitled to greater weight than the nature of the offense. *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 776, 445 N.E.2d 1213, 1222, citing *People v. Hayes* (1979), 70 Ill. App. 3d 811, 388 N.E.2d 818.

Before imposing sentence, the trial judge made it clear that he had considered the cumulative evidence as well as other factors in mitigation and aggravation. The judge noted the brutal nature of the

attacks upon the victim as well as defendant's lack of remorse.

◾ Neither defendant's contentions nor the record gives us any basis for deviating from the established principle that the trial court's decision in regard to sentencing is entitled to great weight. (*People v. Metoxen* (1983), 121 Ill. App. 3d 472, 478, 459 N.E.2d 975, 979.) We find no abuse of discretion in the trial court's imposition of a 20-year sentence.

◾ Next, defendant makes the claim that his conviction should be reversed because the conversation with the victim, which was the basis of his arrest and conviction, was intercepted by Chicago police officer Thun without the consent of either defendant or the victim. Defendant argues that the victim's employer instructed Thun to listen to the conversation on a telephone extension. There was never any consent by the victim. Consequently, Thun's action violated the United States and Illinois constitutional provisions by conducting a warrantless interception of the conversation.

We reject defendant's contentions. First, a telephone extension is not an eavesdropping device as defined by Illinois law. (*People v. Gaines* (1981), 88 Ill. 2d 342, 363, 430 N.E.2d 1046, 1056.) Second, *People v. Richardson* (1975), 60 Ill. 2d 189, 328 N.E.2d 260, cited by defendant, does not support his contentions, since Officer Thun's act of listening on the telephone extension did not constitute an unreasonable interception of a communication, which is improper even if no eavesdropping device is employed. Defendant's argument also fails on other grounds. Although the victim did not verbally ask Officer Thun to listen to the conversation, her behavior implied consent. The victim was seated approximately 15 feet away from Officer Thun when he (the officer) picked up the telephone extension. At no time did the victim indicate to defendant that someone was listening without her consent, not did she indicate to Thun in any way that he should not listen to the conversation. The cumulative evidence strongly supports the conclusion that the victim consented to Officer Thun's act of listening to her conversation with defendant, albeit such consent was not expressed orally.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P.J., and ROMITI, J., concur.